We're going to move now to Appeal 25-1859. This is Packaging Corporation of America Thrift Plan v. Dena Langdon, and we'll let you get unpacked there, Mr. Mayor, and then you can take the lectern. I had a law partner who, every time I used the word podium, and I should have said lectern, would wag his finger at me and said, this is a lectern, it's not a podium. So he's not here, but I'm giving him credit anyway. Mr. Mayor, we'll recognize you now on behalf of the appellant. Yes, Your Honors. My name is Jeff Mayer, and I'm here representing Dena Langdon, is the way she likes to say her name. And she is the designated primary beneficiary under the plan that we're going to be talking about, which is an ERISA plan. And the main issue is dealing with substantial compliance and how that applies. But before we get to that, I would like to discuss, because I think there's a jurisdictional issue here that needs to be addressed by the court. And that arises out of the oddities of the way the case proceeded. And the case proceeded normally between the estate of Carl Kleinfeld, the deceased, who was the participant in the plan, and Dena Langdon, who was the primary designated beneficiary. And it went through the administrative process under the plan. And because there was a dispute, then we went into, it was filed, excuse me, an action was filed. I can't remember that, why they actually call it off the top of my head. But, and then as that action proceeded, Judge Peterson recognized that there was another necessary party that should be part of the action. And I really don't dispute that there's an actual necessary party. And that was the, so there's a primary beneficiary under the plan, and there were two alternates. And the plan, in my opinion, well I think everyone's opinion, clearly stated that if there's a deceased, then if there are not any other beneficiaries, that then the estate of the deceased would be the benefit, receive the benefits. That estate would receive the benefits under the plan. In this situation, Dena Langdon was there, which is being argued that she's not a proper beneficiary. And there was another alternate beneficiary that was alive at the time. She was sick, she had been fighting cancer for a long time. And, but she was alive, and she was actually, at the time, the personal representative for the estate of Carl Kleinfeld. And, and the plan states that if that's the case, and if that, if the primary is determined not to be the primary beneficiary, and then the alternate, who was still alive at the time, dies, it's the alternate estate that becomes the beneficiary, receives the plan's benefits. The jurisdictional question comes into play, is that whereas all the administrative procedures were exhausted between the estate of Carl Kleinfeld and Miss Langdon, none of them were done with the estate of Terri Schultz. And then Schultz was given notice, but then Schultz didn't ultimately appear, Schultz's estate. After the action had begun, right, the judge said, well, what are we going to do? He said, she hadn't even made a claim. She hadn't filed a claim. And the judge said, well, we'll give you the opportunity to file the claim and to provide service for the action if, since the, the, the personal representative for the estate of Carl Kleinfeld, that gets confusing, Kleinfeld was also the personal representative for the estate of Terri Schultz. So we'll recognize that personal representative can accept service on that behalf, and then pursue a claim. And what that personal representative did was accept service. And then she filed a document that says that the estate of Terri Schultz, which was her mom, intends on pursuing a claim. And that was it as far as any administrative procedures were concerned. And that doesn't even qualify as an administrative procedure. I do want to say, the estate of Terri Schultz never filed an answer to the complaint. The only thing filed was that notice that she intended on pursuing a claim. And counsel, where that, I think, would have perhaps more of an impact, and this gets into your argument regarding the District Court's sua sponte granting summary judgment. There's a binary choice that you're asking the District Court to make, and that's does your client, is your client entitled to the funds? And if that answer is no, that's why you're here. It just so happens that if that answer is no, someone else is getting the money. But we are here adjudicating, and the District Court did adjudicate, and even before it went to sua sponte summary judgment regarding Schultz, it's answering the question, is your client entitled to the money? What am I missing there? Well, there were, if you count the sua sponte summary judgment, there were three summary judgments. My client is the designated primary beneficiary, and I don't think I'm quite understanding what you're asking. So you're here saying that your client, as the designated primary beneficiary, is entitled to the proceeds, correct? Correct. And if there was substantial compliance to change your client from the beneficiary, then your client isn't entitled to the money, correct? Once again, no. If there was substantial compliance in the effort to remove your client as the beneficiary, then your client isn't entitled to the money, correct? Correct. So let's address that issue then. And to me, the other issues, they just flow from that. If there was, okay, if your client doesn't get the money, then there's three other potential claimants, then perhaps there's more procedure that is due to figure out which one of those potential claimants should receive the money. But once the district court has determined whether or not your client is entitled to the funds, we've effectively answered the only question that's before the court. There is the administrative procedures, Your Honor, that we don't know for sure what the client administrator would determine. And then there's the issue of burden of proof, I guess. But I understand what you're saying. I understand what you're saying. So let's talk about it, because I don't think there's substantial compliance in this case. Tell us why. And the reason is, well, the main case, David v. Holmes, clarifies that for there to be substantial compliance, there has to be some type of evidence of showing intent. And there has to be evidence that shows that there is substantial compliance with the procedures required to change a beneficiary under the plan. And the intent that is being relied upon is the facts of October 4th that was sent by an administrator. His name is Jordan Wren, HR manager. It wasn't sent by the deceased, Mr. Kleinfeld. It was sent by this other person. And if it was sent by him, by Mr. Kleinfeld, maybe it shows intent. But the bigger issue is what compliance there was with the plans, provisions to require for a change of a beneficiary. And the plan is pretty clear. It's fairly simple, actually. It can be done. It can be done by going online, all the documents sent out in the plan, identify the website, they can go on to change the beneficiary. It can be done with a simple phone call to the benefit center. Neither of those were done. There's no evidence in the record that those were done. There is evidence that a couple of years ago, prior to his death, he had made a call to the benefit center, so he knew how to make the phone call, but never made the phone call. This is with regard to the 2006 previous divorce. Yes. So there is evidence also, the administrative record shows that he was divorced, he knew the process, the procedures that were required to change a beneficiary, he just didn't do them. And I would have to say that there's kind of a prejudice that you assume that he must have intended on doing it some way. But, you know, the candidate talks about not getting into specific facts and we could get into all those deep facts as far as why it's believed that Denae Langdon believes that he intended to keep her on as the primary beneficiary, but Kennedy says we don't go there. And the only chip in that armor of not going there is substantial compliance. And the rule says you have to have substantial compliance, you have to have done something. That was consistent with the plans, provisions in the plan to change a beneficiary. Mr. Kleinfeld knew what those were and he just didn't do them. Would you like to reserve the remainder of your time? Thank you, Mr. Meyer. Mr. Sauer, we'll move to you now for argument on behalf of the appellee. Mr. Sauer. May it please the Court. My name is Mark Sauer. I represent the estate of Carl Kleinfeld and the estate of Terry Schultz. The District Court correctly found that the Federal Common Law Doctrine of Substantial Compliance removed Denae Langdon as the primary beneficiary, Mr. Kleinfeld. Mr. Sauer, let me jump in there because there's a debate, obviously, between the parties on whether the substantial compliance rule has been satisfied. That is, as Judge Kollar has indicated, really the dispositive question. If we were to go a different route, we've got some issues that arise. This de novo review versus abuse of discretion review, if we were to agree that de novo review applies in a case like this, we could end up creating a circuit split with the Eighth Circuit in this application of the abuse of discretion. And we've got the Kennedy case, as Mr. Meyer has referenced, that the substantial compliance rule could directly conflict with these bright-line plan document rules that Kennedy has. So we are, this is one of those Pandora's boxes case, where it depends how we open it up, we could have a variety of consequential decisions to make. Are you aware of that? And then what are your thoughts with regard to those consequential issues? I have thought about those issues, Your Honor, as you might imagine. I read the Kennedy case as acting to a certain extent as a shield to the plan administrator. That if the plan administrator makes a decision based upon its documents, that the law should protect them. Or, not fully protect them, but it gives a higher standard of review. So in the facts of that Kennedy case, we have a participant who had been divorced for quite a good long time, maybe 10 years, and then he passed away. And he had taken no steps in that 10-year interim to remove his former spouse as his beneficiary. And in that case, I believe his estate or the other claimants were arguing that they should, that the administrator should rely upon some waiver doctrine in the divorce documents. So, this case is different than that because we do have an attempt to change the beneficiary, to remove the beneficiary, I should say. What are we supposed to make of the fact that Mr. Kleinfeld learns that the facts did not affect the change and didn't take steps after that? I'm not sure the record fully supports that statement, Your Honor. Well, there was a period of time there where he was told, if you want to do this, this is what you have to do, and then he didn't take those steps. That makes it a challenge to conclude that for all practical purposes he has done what he had to do, right? Well, Your Honor, the statements in the record that I've seen indicated that someone had a conversation with him about something. It doesn't really get into what was said or what wasn't said. I know there's an argument out there that he had been divorced in 2006 and he had changed his beneficiary, but the record is very undeveloped as to what the process was back in 2006. It may have been very different back then. So, I don't know. It's an interesting question, and I suspect that if this case had not been in the interpleader area that it is, or in the interpleader, that we might have a different result. That if the plan administrator had, in fact, made a decision to distribute the funds and that the other claimants had brought a claim in federal court for the money or in state court for that matter, I think Kennedy would be much more in play than it is now. Mr. Sauer, the cases, a lot of the cases or many of the cases that talk about substantial compliance deal with circumstances where the owner of the policy at least tried or invoked the same procedures but just didn't check a box or forgot a signature or forgot an address, where there was some technical deficiencies with what was provided. But nevertheless, the owner of the policy did provide or did try to follow the procedures that the plan had put in place. This seems like a very different situation where the procedures weren't even closely followed, and it was like a whole new way of trying to change the beneficiary that was attempted here. What is your response to that? This is an interesting situation, and one of the things that makes this situation interesting is that as your Honor noted, all our other substantial compliance cases usually involve someone who didn't complete the form as required. They didn't sign it. They checked the box wrong. They had some other error, but there's a form, and they did in fact send it to somebody. This is a situation where there is no form, first of all. We have, you know, you can go call a phone number or you can go to a website and try and make your changes that way. So we have a participant who did something very different, but one could argue that he actually did something more. At least he did something that created a record or a history of what his intention was. This wasn't like he went into the human resources office at the factory and said, well, I want to remove my ex-wife now that we're divorced. Please take care of that, and he turned around and left. No one would say that was substantial compliance. Here he went into the office. He caused or asked, I assume, someone there to cause a fax to be sent to the plan administrator. So he did at least create a record there, which makes it in some ways equivalent to having a form that was incorrectly filled out. He did make a tangible effort to change that beneficiary, and he clearly expressed his intent in doing that. I think if you look at the timing of everything, he gets divorced in September of 2022, and then in early October of that same year, he causes that fax to be sent asking his ex-spouse to be removed. So there's clearly a very interesting time correlation there. I mean, I don't think anyone really can dispute that Mr. Kleinfeld wanted to remove his ex-wife as his spouse. That assumes, though, your conclusion. And we're here with an appellate review of district court decision which made this determination based upon a certain quantum of evidence that it received. And one of the things we're doing is we're comparing and contrasting it to how far other individuals got on that road towards substantial compliance. The Rendleman case, some of these other cases, that talk about how far they went. That's really the substantial compliance call. So, Your Honor, Rendleman was verbal only, I believe. And so I think we could all... I hope we would all agree that sending a fax is more than verbal. There's no dispute about what... I should say there's less dispute when one sends a writing than if one is using words, verbal words. Most of the other cases that I've seen where they find there isn't a substantial compliance, honestly, you use state law, substantial compliances can be a different case. But even just looking at some of those fax, there are situations, the Illinois State case of Dooley, where I believe there was a participant change form that was filled out but was found in an office. There's the Minnesota case, Kagan, where very similarly they found a beneficiary change form completely filled out, but it had been filled out one year prior and found in a dust drawer at home. But Johnson is telling us this is federal common law. Yes. After 02, 02, 03. So we're in that slice of not interpreting statutes but engaging literally in common law adjudication. Correct. And there's not a lot of cases. There are some, but not a lot of cases that speak to this. So what we're doing is we're doing classically what a state court would do of engaging in that common law analysis with regard to how far Kleinfeld went and whether Kleinfeld went far enough. Kleinfeld certainly went farther than the Dooley case or the Kagan case in that he transmitted his intention in writing. I would say that when a participant fills a form out but never sends it, we're left with, well, what was their intent? Did they fill it out and change their mind and not throw it away? We could speculate for quite a long time about what that particular issue meant, but here at least we have someone who took tangible steps to communicate his intent to his employer's plan. Was it the case that for all practical purposes Kleinfeld had taken an intent and positive action to change the beneficiary? I believe so, Your Honor. And I want you to develop your argument rather than offering a conclusion. He got divorced in September, as I mentioned, and that divorce document provided that there was going to be a split of that plan. And some weeks, less than a month, he caused a fax to be sent that would have mirrored his divorce documents. He even sent those divorce documents into the plan. He asked the plan to do everything that the plan needed to be done in the divorce. So the health insurance was changed, the vision, dental, life insurance. His fax mentioned all of those things, and all of those things were changed. The only thing that wasn't changed was the... And I'm looking at the fax, which is page 89 of the appendix. So... I think we have to consider that fax as a step in a process. It's the culmination of his divorce. I'm also looking at appendix 145 and 146, where the plan's executive assistant calls Kleinfeld after the fax and says, hey, these are the steps you need to do. Those are the things that he didn't do. That's where we could have difficulty reaching this conclusion that, for all practical purposes, he's effectuated both the intent and the positive action. Your Honor, the case law on positive action is fairly clear that one doesn't have to do everything that one needs to do. One needs to take a positive action to show this is what my intent was. And... I don't know if in some of these cases where we have an unsigned form, if the form had been sent in and then someone noticed it and said, hey, you didn't sign the form, you have to sign the form, and that didn't happen, and we could speculate about that. But in those cases, like in Davis v. Combe, this court found that that was substantial compliance. And... I don't know in those cases if there is really that much of a meaningful difference between... I apologize, Your Honor. What I keep kind of in my mind is we have all these cases that have forms to fill out, and now we have a situation where there is no form to fill out. You can make a phone call or you can go to a website. And... I... My position is, as I'm sure you all are aware, is that a fax is better than calling a phone number or a website. I think we have to be, of course, careful that we're not comparing to a certain extent, but I think substantial compliance does sometimes call for that. Well, this is where we get into Kennedy and the idea of plan-document rules, and if the plan requires certain things be done and that a fax isn't sufficient, does that apply or not? So that takes us all the way back to those original questions I had about Kennedy and the split with the Eighth Circuit on some of these questions. Right. And... The... You know, I know there is the recent Sixth Circuit case, which is factually very different from this, the Guy case where the beneficiary murdered the participants. But that case does note that Kennedy is not the end-all across the board, that the plan documents don't control in every situation. I think we can start with that. And in this situation, we have factually very different situations from Kennedy's I've already said. But... I don't know that Kennedy, because it's not an interpleader case, really comes into play at the end of the day. Because we're not acting to protect or shield the plan administrator from their actions. Their action was to go to interpleader and ask the district court to make a decision. I see my time is up. Thank you, Mr. Sauer. Thank you. Mr. Mayor, we'll now go back to you for a rebuttal argument. Thank you, Your Honors. Kennedy is more than just about protecting the plan administrator. It's about having a process so people know what's going to happen. And it can proceed fairly quickly and people can get paid what they deserve to be paid under the plan. And, you know, there's a discussion about the fax. There's no evidence here that that fax was sent by Karl Kleinfeld. It wasn't signed by Karl Kleinfeld. His name was typed on it. If it wasn't sent, why would the EA then have called back? We're not disputing that. He probably went in there and said, I don't think that Jordan Ren just did this on his own. But whether or not it was reviewed before it was sent and exactly how it was read or typed up, there's no evidence on that fact. The other thing, you know, you mentioned Rendam. I mean, I think that court did a nice job in saying, you know, there really are two types of cases here. One of them, they always complete with everything according to the provisions of the plan, and those that don't do hardly anything. This is not a case where Mr. Kleinfeld nearly completed what was required under the provisions of the plan. This falls into that category where very little was done, and substantial compliance does not apply. Another point I wanted to make was, you know, because I was talking a lot about the fax, the fax being different, the further you go down this road of substantial compliance and away from Kennedy, the more burden is placed on the plan administrator. The plan administrator is put into a position where how much investigation do they have to do? Do they have to go outside the plan and look at the fax? And I suggest that the cases say no, that you look at what was done under the plan provisions to change a beneficiary, and if substantial amount was not done, substantial compliance does not apply. Thank you, Mr. Mayor. Thank you, Mr. Sauer. The case will be taken under advisement.